TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice
BETHANY ENGEL
Senior Attorney
KAYCI G. HINES
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-514-6892
Email: Bethany.Engel@usdoj.gov
        Kayci.Hines@usdoj.gov

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Telephone: 671-472-7332
Email: Mikel.Schwab@usdoj.gov

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. _____ |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR |
| | ) | INJUNCTIVE RELIEF AND |
| | ) | CIVIL PENALTIES UNDER |
| v. | ) | THE CLEAN WATER ACT |
| | ) | |
| GUAM WATERWORKS AUTHORITY | ) | |
| and the GOVERNMENT OF GUAM, | ) | |
| | ) | |
| Defendants. | ) | |

1

The United States of America (the "United States"), by the authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges:

## NATURE OF ACTION

1. This is a civil action brought against Guam Waterworks Authority ("GWA"), seeking injunctive relief and civil penalties for violations of the conditions and limitations of National Pollutant Discharge Elimination System ("NPDES") permits EPA issued to GWA pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342. The Government of Guam ("GovGuam") is identified as a co-defendant as required by CWA Section 309(e), 33 U.S.C. § 1319(e).

## PARTIES

2. Plaintiff is the United States of America.

3. Defendants are GWA and GovGuam. GovGuam is identified as a co-defendant as required by CWA Section 309(e), 33 U.S.C. § 1319(e).

4. GWA is a public corporation and an agency of GovGuam. GWA has the authority to collect, treat, and sell or dispose of wastewater on Guam.

5. GWA may sue and be sued in its own corporate name under Title 12 of the Guam Code Annotated, Chapter 14, § 14104(e). 12 Guam Code § 14101(e).

6. GWA owns and operates a sanitary sewer collection system that consists of sewers, manholes and other associated appurtenances (collectively, the "Collection System") that is organized into three wastewater districts – Northern, Central, and Southern. Each of those wastewater districts is aligned with the service area of GWA's four permitted wastewater

2

treatment plants (each a "WWTP" and collectively the "WWTPs"). GWA is responsible for all aspects of the engineering, operation, and maintenance of its Collection System and WWTPs.

7. The Collection System and the WWTPs owned and operated by GWA are a "treatment works" within the meaning of CWA Sections 502(16) and 212(2) of the CWA, 33 U.S.C. §§ 1362(26) and 1292(2), and POTWs within the meaning of 40 C.F.R. §§ 122.2 and 403.3(q).

8. GWA is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

9. GWA is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

10. Guam is an unincorporated territory of the United States and is a "State" within the meaning of Section 502(3) of the CWA, 33 U.S.C. § 1362(3).

11. Guam is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

## JURISDICTION, VENUE AND NOTICE

12. This Court has jurisdiction over the parties and the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, and CWA Sections 309(b) and (e), 33 U.S.C. § 1319(b) and (e).

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), and CWA Section 309(b), 33 U.S.C. § 1319(b), because the defendants are located in this district and the events or omissions giving rise to this action occurred in this district.

14. The United States notified GovGuam of this action under CWA Section 309(b), 33 U.S.C. § 1319(b).

3

## CLEAN WATER ACT STATUTORY AND REGULATORY PROVISIONS

15.     The CWA's objective is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).  The CWA establishes a national goal to eliminate the discharge of pollutants into navigable waters.  33 U.S.C. § 1251(a)(1).

16.     CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant" by any person to navigable waters of the United States except, among other things, as authorized by, and in compliance with, a NPDES permit issued by EPA or an authorized state under CWA Section 402, 33 U.S.C. § 1342.

17.     CWA Section 502(12) defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).

18.     CWA Section 502(6) defines "pollutant" to include, *inter alia*, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water.  33 U.S.C. § 1362(6).

19.     CWA Section 502(7) defines "navigable waters" as the "waters of the United States, including the territorial seas."  33 U.S.C. § 1362(7).

20.     CWA Section 502(14) defines "point source" as "any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

4

## NPDES Program

21.     Under CWA Section 402(a), 33 U.S.C. § 1342(a), the EPA Administrator may issue NPDES permits, which authorize the discharge of pollutants into waters of the United States subject to the conditions and limitations set forth in such permits.

22.     CWA Section 402(a)(2), 33 U.S.C. § 1342(a)(2), directs the EPA Administrator to prescribe conditions and limitations, including effluent limitations and reporting requirements, for NPDES permits to ensure compliance with certain requirements of the CWA, including Section 301(a), 33 U.S.C. § 1311(a).

23.     Under CWA Section 402(b), 33 U.S.C. 1342(b), the EPA Administrator may approve a state's administration of the NPDES program in that state.  The United States does not have information indicating that Guam has ever applied for and the EPA Administrator has ever approved Guam to administer the NPDES permit program in Guam.

24.     CWA Section 301(b), 33 U.S.C. § 1311(b), requires a POTW to achieve effluent limitations based on secondary treatment of wastewater.  40 C.F.R. Part 133 provides information on the level of effluent quality attainable through the application of secondary or equivalent treatment.

25.     CWA Section 301(h), 33 U.S.C. § 1311(h) allows for the modification of secondary treatment requirements if certain requirements are met.

26.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on the quantity, rate, and concentration of chemical, physical, biological, and other constituents that are discharged from point sources.

27.     Pursuant to 40 C.F.R. § 122.41(a), a permittee must comply with all conditions of its NPDES permit and any permit noncompliance is a violation of the CWA.

5

28.     Pursuant to 40 C.F.R. § 122.41(e), a permittee must at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) installed or used by the permittee to achieve compliance with the conditions of its NPDES permit, including backup or auxiliary facilities.

29.     Pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, the EPA Administrator "shall require the owner or operator of any point source" to, *inter alia*, (i) establish and maintain records, (ii) complete reports, (iii) install, use, and maintain monitoring equipment, (iv) monitor and report the pollutant levels in its discharged wastewater, and (v) provide related information.

30.     The CWA relies on accurate monitoring by dischargers who are accountable for data they collect and report. Pursuant to 40 C.F.R § 122.41(l)(4), a permittee must report the results of monitoring required by its NPDES permit to EPA at intervals specified in its permit.

31.     Section 307 of the CWA, 33 U.S.C. § 1317, requires EPA to establish requirements for the introduction of pollutants into a POTW. Pursuant to that authority, EPA established the pretreatment regulations at 40 C.F.R Part 403.

32.     The National Pretreatment Program, published in 40 C.F.R. Part 403, provides the regulatory basis to require industrial dischargers to comply with standards governing the treatment of wastewater before it is discharged to a POTW.

33.     Pursuant to 40 C.F.R. § 403.8, a POTW with a total design flow greater than 5 million gallons per day ("MGD") and which receives pollutants from industrial users that pass through or interfere with the operation of the POTW or are otherwise subject to pretreatment standards are required to establish a POTW pretreatment program that meets the requirements of 40 C.F.R Part 403.

6

34.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates, *inter alia*, any condition or limitation in an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.  The United States Department of Justice has authority to bring this action on behalf of EPA pursuant to Section 506 of the CWA, 33 U.S.C. § 1366.

35.     CWA Section 309(d) provides that any person who violates any permit condition or limitation contained in an NPDES permit issued under Section 402, 33 U.S.C. § 1342, shall be subject to civil penalties.

## **GENERAL ALLEGATIONS**

<u>GWA's Wastewater Treatment Plants and Sanitary Sewer Collection System</u>

36.     GWA owns and operates four WWTPs on Guam.  These WWTPs, which provide treatment for wastewater from their respective service areas, are: (1) Agaña/Hagåtña Sewage Treatment Plant, Route 1, Hagåtña ("Agaña/Hagåtña WWTP"); (2) Northern District Sewage Treatment Plant, Route 34, Harmon Annex/Dededo ("Northern District WWTP"); (3) Agat-Santa Rita Wastewater Treatment Plant, Route 2A, Agat ("Agat WWTP"); and (4) Umatac-Merizo Wastewater Treatment Plant, Route 2, Merizo ("Umatac WWTP").  Until August 31, 2018, GWA was also the owner, operator, and NPDES permit holder (NPDES Permit No. GU0020095) for the Baza Gardens WWTP.  The Baza Gardens NPDES permit expired on August 31, 2018, and the wastewater flow previously processed by this WWTP was re-routed to the Agat WWTP on December 31, 2018, eliminating the need for a renewal of the Baza Gardens NPDES permit.  As a result, the permit was terminated on January 31, 2019.  Agaña/Hagåtña

7

WWTP, Northern District WWTP and Agat WWTP all discharge to the Philippine Sea, while Umatac WWTP discharges to the Toguan River.

37.     GWA's Collection System consists of approximately 320 miles of gravity sewer and force mains, approximately 6,500 manholes, and 82 pump or ejector stations.

GWA's NPDES Permits

38.     On April 10, 2013, EPA issued NPDES Permit No. GU0020087 to GWA for its Agaña/Hagåtña WWTP and associated sections of the Collection System under CWA Section 402(a), 33 U.S.C. § 1342(a), and for the first time, this permit established full secondary treatment requirements.  Previously, EPA granted a waiver of the secondary treatment requirement pursuant to Section 301(h) of the CWA, 33 U.S.C. § 1311(h).  The 2013 permit became effective on June 1, 2013, expired on May 31, 2018, and was administratively extended until the issuance of a new permit.

39.     On April 10, 2013, EPA issued NPDES Permit No. GU0020141 to GWA for its Northern District WWTP and associated sections of the Collection System under CWA Section 402(a), 33 U.S.C. § 1342(a), and for the first time, this permit established full secondary treatment requirements.  Previously, EPA granted a waiver of the secondary treatment requirement pursuant to Section 301(h) of the CWA, 33 U.S.C. § 1311(h).  The 2013 permit became effective on June 1, 2013, expired on May 31, 2018, and was administratively extended until the issuance of a new permit.

40.     On June 14, 2010, EPA issued NPDES Permit No. GU0020222 to GWA for its Agat WWTP and associated sections of the Collection System, with an effective date of August 1, 2010, under CWA Section 402(a), 33 U.S.C. § 1342(a).  That permit expired on July 31, 2015 and was administratively extended until issuance of a new permit.  EPA reissued the Agat

8

WWTP NPDES permit on November 28, 2017, effective as of January 1, 2018 and with an expiration date of December 31, 2022.

41.     On January 13, 2009, EPA issued NPDES Permit No. GU0020273 to GWA for its Umatac WWTP and associated sections of the Collection System under CWA Section 402(a), 33 U.S.C. § 1342(a).  That permit became effective as of March 1, 2009, expired on February 28, 2014, and was administratively extended until issuance of a new permit.  On August 19, 2015, EPA reissued that permit to GWA, which became effective on September 1, 2015 and expired on August 31, 2020.

42.     On November 21, 2019, EPA jointly reissued all four NPDES Permits (NPDES Permit Nos. GU0020141, GU0020087, GU0020222, and GU0020273) to GWA, one for each WWTP and its associated sections of the Collection System.  Each permit had an effective date of January 1, 2020 and will expire on December 31, 2024 unless reissued or administratively extended pursuant to 40 C.F.R. Part 122.  These permits are collectively referred to herein as the "2020 Permits".

Conditions and Limitations of GWA's NPDES Permits

43.     Since at least 2013, GWA's NPDES Permits for the four WWTPs (NPDES Permit Nos. GU0020087, GU0020222, GU0020141, and GU0020273) have each included conditions and limitations regarding, *inter alia*, (i) effluent discharge; (ii) Sanitary Sewer Overflows ("SSOs"), (iii) monitoring and reporting; (iv) proper operation and maintenance; (v) a Pretreatment Program (setting forth requirements for the treatment of wastewater before introducing it into a POTW); and (vi) a Fats, Oils, and Grease ("FOG") maintenance program (setting forth requirements to minimize Fats, Oils, and Grease, which degrade and create blockages in the Collection System).

9

44.    Since at least 2013, GWA's NPDES Permits (NPDES Permit Nos. GU0020087, GU0020222, GU0020141, and GU0020273) have included effluent discharge limits for various pollutants from GWA's four permitted outfalls.

45.    Since at least 2013, GWA's NPDES Permits (NPDES Permit Nos. GU0020087, GU0020222, GU0020141, and GU0020273) have included monitoring and reporting requirements.

46.    Since at least 2013, GWA's NPDES Permits (NPDES Permit Nos. GU0020087, GU0020222, GU0020141, and GU0020273) have included operation and maintenance requirements.  The Permits require that all facilities and systems of treatment and control (and related appurtenances) installed or used by the permittee to achieve compliance with the conditions of each permit be properly operated and maintained.

47.    Since at least 2013, Part III, Section C of GWA's Northern District and Agaña/Hagåtña 2013 NPDES Permits (NPDES Permit Nos. GU0020141 and GU0020087), have included the requirement that "GWA shall submit to EPA for review and approval [a] revised pretreatment ordinance to develop, implement, and enforce [40 C.F.R. Part] 403."

48.    Since at least 2013, Part III, Section D of GWA's Northern District and Agaña/Hagåtña 2013 NPDES Permits (NPDES Permit Nos. GU0020141 and GU0020087) and Part III, Section E of its Agat 2018 NPDES Permit (NPDES Permit No. GU0020222), have included the requirement that GWA submit a comprehensive FOG Program, to be applied across GWA's Collection System, to EPA for its review and approval.

49.    Since at least 2018, Part III, Section F of the Agat 2018 Permit states that "all Sanitary Sewer Overflows are prohibited as unauthorized discharges from the collection system." Section F defines SSOs to include "a) overflows or releases of wastewater that reach waters of

10

the US, b) overflows or releases of wastewater that do not reach waters of the US, and c) wastewater backups into buildings that are caused by blockages or flow conditions in a sanitary sewer other [than] a building lateral."

### The 2020 Permits: Technology-Based Effluent Discharge Limitations and Monitoring Requirements

50.     The 2020 Permits set forth effluent limitations based on secondary treatment for Biochemical Oxygen Demand ("$BOD_5$"), Total Suspended Solids ("TSS"), and pH, in accordance with CWA Section 301(b)(1)(B), 33 U.S.C. § 1311(b)(1)(B), and as defined in 40 C.F.R. § 133.102.

51.     The 2020 Permits also include effluent limitations for, among other pollutants, Enterococci/Enterococcus, Oil and Grease, Chlorine, Nitrate-nitrogen, Orthophosphate, Copper, and Zinc.

52.     The 2020 Permits also include monitoring requirements, including frequency of monitoring (e.g., continuous, weekly, quarterly, or annually) and sample type, for each covered pollutant at each WWTP.

### The 2020 Permits: General Conditions

53.     Part V of the 2020 Permits sets forth general conditions applicable to the NPDES permits for all of the WWTPs and Collection System.

54.     Part V, Section A of the 2020 Permits sets forth general requirements, including operation and maintenance requirements.

55.     Part V, Section C of the 2020 Permits sets forth monitoring and reporting requirements, including GWA's required quarterly submission to EPA of Discharge Monitoring Reports (each a "DMR") for all permitted outfalls, with DMRs to be electronically submitted "by the 28th day of the month following the previous reporting period" and annual and quarterly

11

monitoring to be "conducted starting in the first complete quarter or calendar year following permit issuance," with reporting for annual monitoring "due on January 28th of the following year." Section C specifies that, "[a] DMR must be submitted for the reporting period even if there was not any discharge."

56. Part V, Section H of the 2020 Permits sets forth GWA's Pretreatment Program requirements, including the threshold requirement that "within one year of permit issuance, [GWA] shall submit for review a written description of [its] Pretreatment Program."

57. Part V, Section I of the 2020 Permits sets forth the requirements for GWA's FOG Program to be applied to the Collection System, including the requirement that "[w]ithin six months after permit issuance, [GWA] shall develop and implement a comprehensive FOG Program to implement and enforce grease control measures."

58. Part V, Section J of the 2020 Permits states that "all Sanitary Sewer Overflows are prohibited." Section J defines SSOs to include "a) overflows or releases of wastewater that reach waters of the US, b) overflows or releases of wastewater that do not reach waters of the US, and c) wastewater backups into buildings that are caused by blockages or flow conditions in a sanitary sewer other [than] a building lateral."

<u>The 2020 Permits: Standard Conditions</u>

59. The 2020 Permits, at Part VI, set forth EPA standard conditions that apply to GWA's WWTPs and Collection System. Part VI clarifies that such standard conditions collectively apply to the 2020 Permits and expressly incorporate the conditions set forth in 40 C.F.R. § 122.41.

60. GWA is required to "at all times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by

12

[GWA] to achieve compliance with the conditions of [the 2020 Permits]" pursuant to 40 C.F.R. § 122.41(e) and in Part VI, Section A(5) of the 2020 Permits. Part VI, Section A(5) states that "[p]roper operation and maintenance also includes adequate laboratory controls and appropriate quality assurance procedures" and "requires the operation of backup or auxiliary facilities or similar systems which are installed by a permittee only when the operation is necessary to achieve compliance with the conditions of the permit."

61.     In addition to the specific monitoring requirements set forth by the 2020 Permits for each of the WWTPs, GWA is required to monitor and record pursuant to 40 C.F.R. § 122.41(j) and Part VI, Section A(10) of the 2020 Permits.

62.     GWA is required to submit DMRs to EPA for each of the WWTPs pursuant to 40 C.F.R. § 122.42(j) and Part VI, Section A(12)(d) of the 2020 Permits.

## SPECIFIC ALLEGATIONS

### Violations of Conditions and Limitations of NPDES Permits

63.     On numerous occasions since at least August 2013, GWA violated various conditions and limitations of its NPDES Permits and the CWA. Set forth below are examples of each category of violations, including GWA's violations of the NPDES Permits': (i) effluent discharge limitations, (ii) SSO prohibition, (iii) monitoring and reporting conditions, (iv) proper operation and maintenance conditions, (v) Pretreatment Program conditions, and (iv) FOG Program conditions.

### Effluent Discharge Limitation Violations

64.     On numerous occasions since at least August 2013, GWA discharged pollutants, including BOD, TSS, Enterococci, Orthophosphate, Oil and Grease, and Copper, in excess of the effluent limitations set forth in its NPDES permits, including the 2020 Permits. From August

13

2013 through September 2021, GWA self-reported in its DMRs approximately 2,712

exceedances of the Permits' effluent limitations in 98 out of 98 submitted monthly DMRs,

including at least 774 exceedances of the effluent limitations at the Agaña/Hagåtña WWTP

Outfall, at least 598 exceedances at the Northern District WWTP Outfall, at least 573

exceedances at the Umatac WWTP Outfall, and at least 767 exceedances at the Agat WWTP

Outfall. These exceedances resulted in the addition of thousands of pounds of pollutants to

waters of the United States without permit authorization. Examples of such violations are set

forth in more specificity in Appendix A, and have continued to date.

65. For instance, as reported by GWA's DMRs:

a. From August 2013 through September 2021, GWA discharged wastewater from the Agaña/Hagåtña WWTP Outfall in violation of the monthly average effluent limitation for Enterococci on at least 98 separate occasions, with an average reported value of approximately 137,691 CFU/100mL, approximately 393,303% above the permitted effluent limit of 35 CFU/100mL. *See* Appendix A.

b. From August 2013 through September 2021, GWA discharged wastewater from the Northern District WWTP Outfall in violation of the monthly average effluent limitation for BOD on at least 97 separate occasions, with an average reported value of approximately 79 mg/L, approximately 163% above the permitted effluent limit of 30 mg/L. *See* Appendix A.

c. Even after completing general upgrades to its Agat WWTP in March 2017, GWA discharged wastewater from the Agat WWTP Outfall in violation of the monthly average effluent limitation for Enterococci on at least 6 separate occasions, with an average reported value of approximately 534 CFU/100mL, approximately 1425% above the permitted effluent limit of 35 CFU/100mL. *See* Appendix A.

d. Even after completing general upgrades to its Umatac WWTP in November 2019, from December 2019 through September 2021, GWA discharged wastewater from the Umatac WWTP Outfall in violation of the monthly average effluent limitation for Orthophosphate on 5 out of the 8 quarters submitted. *See* Appendix A.

14

<u>Specific Monitoring and Reporting Violations</u>

66.    Since at least August 2013, in violation of GWA's NPDES Permits, GWA failed to monitor or report monitoring results to EPA for approximately 2,103 required monitoring parameters over 54 monthly DMRs.  Examples of such violations are set forth in more specificity in Appendix B, and have continued to date.

67.    For instance, as reported by GWA's DMRs:

    a.  In violation of the NPDES Permits for the Agaña/Hagåtña WWTP, GWA failed to conduct monthly monitoring or report monitoring results for daily maximum Oil and Grease on 6 monthly DMRs between November 2017 and August 2020. *See* Appendix B.

    b.  In violation of the NPDES Permits for the Northern District WWTP, GWA failed to conduct monthly monitoring or report monitoring results for the pH of the receiving water on 12 occasions for monthly DMRs between August 2013 and July 2019.  *See* Appendix B.

    c.  In violation of the NPDES Permits for the Agat WWTP, as reported in its DMR for the reporting period ending on December 31, 2017, GWA failed to conduct monitoring or report monitoring results for multiple pollutants such as Cyanide, Antimony, Zinc, Selenium, Thallium, Beryllium, and Nickel. *See* Appendix B.

    d.  In violation of the NPDES Permits for the Umatac WWTP, for 8 out of 12 months in the 2020 calendar year, GWA failed to conduct monitoring or report monitoring results for minimum Toguan River flow which is required to ensure compliance with dry weather discharge prohibitions. *See* Appendix B.

<u>Violations of SSO Prohibitions</u>

68.    In violation of GWA's NPDES Permits, including Part V, Section J of the 2020 Permits and Part III, Section F of the Agat 2018 Permit (NPDES Permit No. GU0020222), which expressly prohibit all SSOs, at least 237 SSOs from GWA's Collection System occurred between January 1, 2018 and September 30, 2021.  Examples of such violations are set forth in more specificity in Appendix C, and have continued to date.

69.    For example, as reported by GWA's DMRs:

15

a.  GWA's 2018 third quarter SSO summary reported an SSO of approximately 12,150 gallons of wastewater starting on or about September 12, 2018 originating from a manhole behind the Guam Fire Department in Agat and overflowing to the shoreline.  *See* Appendix C.

b.  GWA's 2020 fourth quarter SSO summary reported four SSOs originating from Pump Station #17 in Umatac and overflowing to a river, including (i) a SSO of 62,500 gallons on or about November 30, 2020, (ii) a SSO of 20,850 gallons on or about December 2, 2020, (iii) a SSO of 1,775 gallons on or about December 5, 2020, and (iv) a SSO of 8,250 gallons on or about December 10, 2020. *See* Appendix C.

c.  GWA's 2021 first quarter SSO summary reported an SSO of approximately 5,425 gallons of wastewater due to FOG obstruction starting on or about February 13, 2021 originating from a manhole in the village of Yigo and overflowing to paved surfaces.

d.  GWA's third quarter SSO summary reported an SSO of approximately 6,464 gallons of wastewater starting on or about September 24, 2021 originating from a manhole and a pump station wet well in the village of Barrigada and overflowing to the paved surfaces.

<u>Violations of Operation and Maintenance Conditions</u>

70.     Since at least 2013, GWA continuously failed to adhere to the NPDES Permits' operation and maintenance requirements for its WWTPs and Collection System.

71.     GWA's operation and maintenance violations include, *inter alia*, GWA's failure to: (i) address plant performance and operator safety; (ii) reduce Infiltration and Inflow ("I/I") – "Infiltration" occurs when groundwater enters a sewer system through, for example, broken pipes, defective pipe joints, or illegal connections of foundation drains, while "Inflow" is surface runoff that enters a sewer system through, *inter alia*, manhole covers, broken pipe and defective pipe joints, and cross connections between storm sewers and sanitary sewers – which was responsible for approximately 10% of GWA's SSOs between January 1, 2020 and September 30, 2021; (iii) prevent FOG blockages which were responsible for approximately 54% of GWA's SSOs between January 1, 2020 and September 30, 2021; (iv) prevent SSOs from the WWTPs

16

including at least 1,308 SSOs from June 1, 2013 to September 30, 2021; and (v) adequately maintain its POTWs' pipes, manholes, and equipment, which were responsible for approximately 30% of GWA's SSOs between January 1, 2020 and September 30, 2021. Such violations have continued to date.

72.     For instance:

a.  EPA inspectors, at a February 7, 2018 compliance inspection of the Agana WWTP noted, among other issues, that (i) one of the two plant sludge centrifuges, designed to prevent the discharge of excess solid waste from the WWTP's outfall, was broken for nearly a year; and (ii) the WWTP's operation belt, with missing guards that exposed the belt's motor fan, was likely to cause injury to the operator.

b.  GWA's 2013 I/I sewer system self-evaluation study of its Agana, Agat, Baza Gardens, and Umatac WWTPs, for instance, reported excessive I/I.

c.  GWA's 2015 I/I data review summary of its Northern District WWTP noted potentially excessive I/I entering the Collection System as indicated by flow monitoring, WWTP flow, and operations staff monitoring.

d.  Due to excessive I/I, GWA's Collection System experienced an SSO of approximately 9,776 gallons from a pump station wet well located in the Central District.

Pretreatment Program

73.     The total design flow for GWA's POTW, which receives pollutants from nondomestic sources subject to pretreatment standards, is approximately 26 MGD, that is, approximately 21 MGD over the 5 MGD threshold for establishment of a Pretreatment Program.

74.     To date, GWA has failed to develop and implement a Pretreatment Program.

FOG Program

75.     FOG blockages, self-reported by GWA as the cause of at least 111 SSOs between January 1, 2020 and September 30, 2021, are the most common cause of SSOs arising out of the Collection System.

17

76. GWA's failure to develop and implement a FOG Program remains one of the most significant hurdles to GWA's compliance with the SSO prohibition in its Permits.

77. To date, GWA has failed to develop and implement a FOG Program.

**FIRST CLAIM FOR RELIEF**
(Failure to Comply with NPDES Permits: Violations of Effluent Discharge Limitations)

78. Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

79. On numerous occasions since at least August 2013, GWA discharged pollutants from permitted outfalls in excess of the permitted effluent limitations, based on secondary treatment requirements, set forth in the NPDES permits for each of its WWTPs (NPDES Permit Nos. GU0020087, GU0020222, GU0020141, and GU0020273), including, *inter alia*, effluent limits for BOD, Enterococci, TSS, Oil and Grease, Copper, orthophosphate, and pH.

80. Each violation of an effluent limit in GWA's NPDES Permits constitutes a separate violation of a condition or limitation in an NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342, and a violation of the CWA.

81. Unless permanently enjoined, GWA will continue to discharge pollutants from its WWTPs in violation of applicable NPDES permit effluent limitations and the CWA.

82. As a result of these violations, GWA is subject to the imposition of permanent injunctive relief and civil penalties under CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**SECOND CLAIM FOR RELIEF**
(Failure to Comply with NPDES Permits: Violations of Sanitary Sewer Overflow Prohibition)

83. Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

18

84. In violation of GWA's NPDES Permits, including Part V, Section J of the 2020 Permits and Part III, Section F of the 2018 Agat-Santa Rita Permit (NPDES Permit No. GU0020222), GWA reported at least 237 SSOs between January 1, 2018 and September 30, 2021.

85. Each SSO is a separate violation of a limitation in the applicable NPDES permit issued by EPA under CWA Section 402, 33 U.S.C. § 1342.

86. Unless permanently enjoined, GWA will continue to violate the SSO prohibition in its NPDES permits.

87. GWA is subject to the imposition of permanent injunctive relief and civil penalties under CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**THIRD CLAIM FOR RELIEF**
(Failure to Comply with NPDES Permits: Violations of Monitoring and Reporting Conditions)

88. Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

89. The NPDES Permits set forth various monitoring and reporting requirements for each of the WWTPs and Collection System.

90. Between at least August 2013 and September 30, 2021, in violation of its NPDES Permits, GWA failed to monitor or report monitoring results for approximately 2,103 required monitoring parameters over 54 monthly DMRs or similar reports submitted to EPA. Such violations have continued to date.

91. Each failure by GWA to comply with the monitoring and reporting requirements of its NPDES permits constitutes a separate violation of a condition or limitation in an NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342.

19

92.     Unless permanently enjoined, GWA will continue to violate applicable monitoring and reporting requirements of its NPDES permits.

93.     As a result of these violations, GWA is subject to the imposition of permanent injunctive relief and civil penalties under CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**FOURTH CLAIM FOR RELIEF**
(Failure to Comply with NPDES Permits: Violations of Operation and Maintenance Conditions)

94.     Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

95.     Since at least 2013, GWA failed, on numerous occasions, to properly operate and maintain its WWTPs and Collection System as required by its NPDES permits.

96.     Each failure by GWA to properly operate and maintain its WWTPs and Collection System constitutes a separate violation of a condition or limitation in a NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342.

97.     Unless permanently enjoined, GWA will continue to violate applicable operation and maintenance requirements of its NPDES permits.

98.     GWA is subject to the imposition of permanent injunctive relief and civil penalties under CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**FIFTH CLAIM FOR RELIEF**
(Failure to Comply with NPDES Permits: Violation of Pretreatment Program Conditions)

99.     Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

100.     In violation of the conditions set forth in its NPDES permits, GWA failed to develop and implement a Pretreatment Program.  In particular, pursuant to (a) Part III, Section C

20

of its Northern District and Agaña/Hagåtña 2013 NPDES Permits (NPDES Permit Nos. GU0020141 and GU0020087), GWA failed to develop and implement a Pretreatment Program prior to the May 31, 2018 expiration date of those permits; and (b) the threshold requirement set forth in Part V, Section H of the 2020 Permits, GWA failed to submit a written description of its Pretreatment Program to EPA by November 21, 2020.

101. Each day that GWA failed to comply with the Pretreatment Program requirements constitutes a separate violation of a condition or limitation in a NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342.

102. To date, GWA has failed to develop and implement a Pretreatment Program. Unless permanently enjoined, GWA will continue to violate applicable Pretreatment Program requirements of its NPDES permits.

103. GWA is subject to the imposition of permanent injunctive relief and civil penalties under CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

### SIXTH CLAIM FOR RELIEF
(Failure to Comply with NPDES Permits: Violation of FOG Program Conditions)

104. Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

105. In violation of the conditions set forth in its NPDES permits, GWA failed to develop and implement a FOG Program. In particular, pursuant to (a) Part III, Section D of its Northern District and Agaña/Hagåtña 2013 NPDES Permits (NPDES Permit Nos. GU0020141 and GU0020087), GWA failed to develop and implement a FOG Program by the May 31, 2018 expiration date of those permits; (b) and by the May 21, 2020 deadline set forth under Part V, Section I of the 2020 Permits.

21

106.     Each day that GWA failed to comply with the FOG Program requirements constitutes a separate violation of a condition or limitation in a NPDES permit issued under CWA Section 402, 33 U.S.C. § 1342.

107.     To date, GWA has failed to develop and implement a FOG Program.  Unless permanently enjoined, GWA will continue to violate applicable FOG Program requirements of its NPDES permits.

108.     GWA is subject to the imposition of permanent injunctive relief and civil penalties under CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d).

**SEVENTH CLAIM FOR RELIEF**
(CWA Section 309(e))

109.     Plaintiff realleges and incorporates by reference paragraphs 1-77 as if fully set forth herein.

110.     Pursuant to CWA Section 309(e), 33 U.S.C. § 1319(e), whenever a municipality is a party to an action brought by the United States under Section 309, the state in which such municipality is located shall be joined as a party.  Section 309(e) further provides that the state shall be liable for payment of any judgment, or any expense incurred as a result of complying with any judgment, entered against the municipality to the extent that the laws of that state prevent the municipality from raising revenue needed to comply with such judgment.

111.     Pursuant to CWA Section 309(e), 33 U.S.C. § 1319(e), GovGuam is liable for payment of any judgment entered against GWA under CWA Section 309(e) to the extent that Guam's laws prevent GWA from raising revenue needed to comply with such judgment.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, the United States of America respectfully requests that the Court:

22

1.    Permanently enjoin GWA from discharging pollutants except as expressly authorized by the CWA, regulations promulgated thereunder, and the conditions and limitations of the applicable NPDES permits.

2.    Order GWA to take all necessary steps to comply with the CWA, regulations promulgated thereunder, and the conditions and limitations of the applicable NDPES permits.

3.    Order GWA to pay a civil penalty for each day of each violation of the applicable NPDES permits, the CWA, and the regulations promulgated thereunder and the corresponding statutory inflation adjustments, up to $37,500 per day for each violation occurring between January 12, 2009 and November 2, 2015, up to $56,460 per day for each violation occurring between November 3, 2015 and January 12, 2022, and up to $64,618 per day for each violation occurring on or after November 3, 2015.

4.    Order that GovGuam is liable, pursuant to CWA Section 309(e), 33 U.S.C. § 1319(e), for payment of any judgment entered against GWA under CWA Section 309 to the extent that the laws of Guam prevent GWA from raising revenues needed to comply with such judgment.

5.    Award the costs of this action to the United States.

6.    Grant the United States such other relief as the Court may deem just and proper.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

23

/s/ Bethany Engel

_____

BETHANY ENGEL
Senior Attorney
KAYCI G. HINES
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: 202-514-6892
Bethany.Engel@usdoj.gov
Kayci.Hines@usdoj.gov

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI
MIKEL W. SCHWAB
Assistant United States Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez
Hagåtña, Guam 96910
Telephone: 671-472-7332
Email: MSchwab@usa.doj.gov

OF COUNSEL:

JANET A. MAGNUSON
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region IX, ORC-2-3
75 Hawthorne Street
San Francisco, CA 94105

CHRISNA BAPTISTA
Attorney-Advisor
Municipal Enforcement Branch
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency, Headquarters
1200 Pennsylvania Avenue, NW
Washington, DC 20460